UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRIDGET LANEGRASSE | DOCKET NO: |
| Plaintiff | |
| v. | JUDGE: |
| DOLGENCORP, LLC d/b/a DOLLAR GENERAL STORES | MAGISTRATE: |
| Defendant | |

## COMPLAINT

**NOW COMES** Plaintiff Bridget Lanegrasse, through undersigned counsel, who respectfully alleges as follows:

### I. INTRODUCTION

This is an action to remedy the violations of the rights of Plaintiff Bridget Goldsmith under the Age Discrimination in Employment Act (and its state counterpart) and Title I of the Americans with Disabilities Act (and its state counterpart). Plaintiff was an employee of Defendant who was discriminated against and ultimately terminated from her employment with Defendant based on her age and disability.

### II. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Bridget Lanegrasse is a person of the full age of majority and a Louisiana resident domiciled in Lafourche Parish, Louisiana.

2. Made Defendant is DOLGENCORP, LLC d/b/a DOLLAR GENERAL STORES, (hereinafter "Dollar General") a foreign corporation authorized to do and doing business in the State of Louisiana, and the Eastern District of Louisiana.

3.  Jurisdiction is conferred upon this Court pursuant to federal question jurisdiction, 28 U.S.C. § 1331, which exists over Plaintiff's federal civil rights claims. *See also* 28 U.S.C. § 1343(a) ("Civil rights and elective franchise"). The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) as they are so related to Plaintiff's federal claims.

4.  Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions alleged herein occurred in the Eastern District of Louisiana. Venue is further proper in this District under 42 U.S.C. § 2000e-5(f)(3) because an action under Title VII may be brought in the judicial district where the unlawful employment practice is alleged to have been committed.

5.  Plaintiff exhausted her administrative remedies with the EEOC regarding her claims under Title VII of the 1964 Civil Rights Act and the Americans with Disabilities Act. Plaintiff received her "Right to Sue Letter" on February 24th, 2019; Plaintiff filed suit on May 17th, 2019; therefore, Plaintiff has filed suit within 90 days of receiving the notice, which is required pursuant to 42 U.S.C. § 2000e-5(f)(1) and 42 U.S.C. § 12117(a).

### III.   FACTS

6.  Plaintiff Bridget Lanegrasse is a 62 year-old female who suffered an on-the-job injury on or about November 11, 2017.

7.  Dollar General originally hired Plaintiff Ms. Lanegrasse in 1993 as a clerk, but she was promoted to Store Manager only a year later in 1994. Prior to 2016, Ms. Lanegrasse was the Store Manager at the Lockport location, but in 2016 she asked to step down and was re-assigned as Assistant Store Manager. Throughout her 22 years as a Store Manager with Dollar General, Ms. Lanegrasse was an exemplary employee, and received awards and bonuses commensurate

with her performance. Most years under her management, the Lockport store was a "$2 million" store, which meant it was one of the best performing stores in the District, as well as the State.

8. Ms. Lanegrasse was asked to step down into the Assistant Store Manager position in 2016 as a result of differential treatment she was experiencing from Ben Quick, the District Manager. Quick favored the younger Store Managers and placed increased demands upon Ms. Lanegrasse as opposed to the other Store Managers in the District who were 20 – 30 years younger than Lanegrasse. As she experienced this treatment, Lanegrasse began to believe that Quick's actions were done in order to try and get her to eventually resign from her position so he could place someone younger in her position.

9. Mr. Quick resigned as District Manager in spring of 2017, upon information and belief for an improper relationship with another employee. He was replaced on a temporary basis by Stephanie Scott. In August of 2017, Scott transferred Lanegrasse to the Raceland store, after threatening her that if she didn't agree to the transfer, she would be demoted again, this time to cashier. Lanegrasse did report this incident to Dollar General's Human Resource Department in light of the continued disparate treatment she was being given as opposed to much younder employees and managers, but she does not know if any action was ever taken or any investigation occurred.

10. At the Raceland store, Lanegrasse served as Assistant Manager while Terrell Martin was the Store Manager. However, Martin was inexperienced, as he had been promoted to that position from just being a cashier, and Lanegrasse had to help him perform many of the managerial tasks in the officer as a result of his inexperience.

11. For the first time in her career, Lanegrasse was written up on October 11th, 2017 by Martin for not fully recovering the store on October 10, 2017. Lanegrasse disputed this write-up, as she

had not worked the previous two days and younger employees who had worked those days had not recovered the store properly, so there was too much work for Lanegrasse to complete before her scheduled time to clock out, and if she had stayed late, that also would have been cause for a write-up.

12. In or around November of 2017, Cassie Bourg, who upon information in belief was only in her late thirties, replaced Martin as the Store Manager at the Raceland Store despite Lanegrasse's long-standing experience as a store manager.

13. On November 11th, 2017, Lanegrasse hurt herself while working in the Raceland store. Specifically, while pulling the change fund out of the safe, Lanegrasse hurt her shoulder. She reported her injury to Bourg the next day, and was hoping that it was just a muscle pull or strain that would recover. However, a week later she reported to Bourg that it had not gotten better, and Lanegrasse was instructed to call the Dollar General Workers' Compensation hotline, which she did. She was sent to Ochsner Urgent Care in Houma, where she was diagnosed with a muscle strain, and she was released in a sling for her shoulder and with light duty restrictions at work. A week later she followed up with the Urgent Care and was released to full duty despite the fact that her shoulder was still bothering her.

14. The next week, after contacting the nurse at the Urgent Care because her shoulder was still bothering her, she was referred to an Orthopedist, Dr. Stone, at Gulf Coast Orthopedic. He diagnosed a torn rotator cuff, and she was scheduled for surgery for January 8th, 2018. In the interim, while working despite her pain, Lanegrasse was written up again by Bourg for store recovery related issues, despite the fact that other, younger employees were not recovering the store in the same manner and despite the fact that she was working while injured and in significant pain.

15. Lanegrasse requested paid time off through Dollar General's Workers Comp Administrator, Matrix Absence Management, starting on the date of her surgery. Despite requesting two weeks off of work, until January 27th, 2018, Lanegrasse was only approved for a week off of work, at which time she returned to work at light duty status even though she was still in significant pain. By Saturday, January 20th, 2018, after working three shifts, Lanegrasse was in too much pain to attempt light duty, and requested additional leave because of her medical condition. Dr. Stone provided a note that she should remain off of work for an additional 6 weeks, which was finally approved by Dollar General. The same day she requested additional time off of work, Lanegrasse was again written up by Bourg, for failing to have the "sale ad" completed and for sales associates not doing any work. Lanegrasse refused to sign this write-up form because she did not feel it was accurate, because she felt like she was being retaliated against for asking for additional leave because of her medical condition, and because other, younger associates were not disciplined for similar issues.

16. Lanegrasse eventually returned to work on March 3rd, 2018, albeit still on light duty as she was recovering from her shoulder surgery. When she returned, like on past occasions, other, younger employees had not been recovering the store properly and it was not up to the usual standards. Lanegrasse worked hard on her first shift back, from 2:30 pm until midnight on that Saturday, March 3rd, and another 10 hours on March 4th, in an attempt to do the best she could despite still being on light duty as Corporate Representatives were coming to inspect the store that Monday. Despite her efforts, the store was apparently given a poor review, which Bourg blamed Lanegrasse for, as opposed to any of the other, younger employees that worked at the store and were also responsible for its condition as part of their normal work duties.

17. Finally, Lanegrasse was terminated on March 16th, 2018, for an alleged incident which occurred on March 10th, 2018. Lanegrasse instructed a sales associate to bring the store carts into the store, as well as sales items which had been left outside, including small plastic pools which Lanegrasse could not physically bring in on her own. The sale associate did not do so, and despite the fact that there was no loss to the store as the pools were not stolen, and despite the fact that in her near 25 years of employment, other employees or managers who had either failed to bring merchandise in from outside, or managers who had failed to make sure that the assigned employees completed such tasks, were rarely written up, and had never been fired for the same.

18. At the time of her termination, Ms. Lanegrasse was the Assistant Store Manager of the Raceland Store, located at 3804 LA-1, Raceland, LA 70394.

19. When she was terminated, Lanegrasse was still recovering from her surgery, and was intending to remain employed with Dollar General until age 65, as she needed the health insurance benefits provided in addition to the income provided by her position.

20. Lanegrasse's termination was pre-textual, as other, younger, and healthier employees without her track record of success had been promoted and/or engaged in similar actions for which she was written up and eventually terminated yet those employees were not disciplined or terminated, and in many instances were actually promoted.

21. Due to the discrimination, and termination, Plaintiff suffered from stress, anxiety, and depression.

### IV. CAUSES OF ACTION

#### A. Age Discrimination

22. Plaintiff incorporates here all prior paragraphs in this complaint.

23.     Defendant has violated both federal and state laws by discriminating against Plaintiff on the basis of her age. *See* the Age Discrimination in Employment Act, 29 U.S.C.. § 621, *et.seq.*, and the Louisiana Commission on Human Rights, La. R.S. 51:2231, *et.seq.*,.

24.     Plaintiff is a over 40 years of age; therefore, she belongs to a protected group.

25.     Plaintiff was at all times qualified for her position as evidenced by her extremely successful work record as a Store Manager for Dollar General over several decades.

26.     Plaintiff was harassed, given poor performance reviews, disciplined, and then terminated, which constitute adverse employment actions.

27.     Defendant replaced Plaintiff with younger employees, and/or promoted younger employees over her.

28.     Defendant treated other, similarly situated younger employees differently than Plaintiff.

29.     Defendant has violated both federal and state laws by disciplining, and eventually terminating plaintiff as opposed to younger employees in violation of the ADEA, which actions were willful violations of the ADEA.

**B.     Failure to Provide Reasonable Accommodations**

30.     Plaintiff incorporates here all prior paragraphs in this complaint.

31.     Defendant has violated both federal and state laws by discriminating against Plaintiff based on her status as a person with a disability and failing to accommodate her disability. *See* Title I of the Americans with Disabilities Act, 42 U.S.C. § 12102 *et seq.* and the Louisiana Employment Discrimination Law, La. R.S. 23:323.

32.     Starting in 2017, Plaintiff sustained a serious shoulder injury, which constituted a disability as that term is understood according to the ADA. Plaintiff notified Defendant of the condition and the problems it caused her.

33. Plaintiff made requests for reasonable accommodations, which were ignored.

34. Plaintiff was at all times qualified for her position as evidenced by her extremely successful work record as a Store Manager for Dollar General over several decades.

35. Plaintiff was never provided any accommodations when she attempted to work through her shoulder injury,

36. Plaintiff was harassed, given poor performance reviews, disciplined, and then terminated, which constitute adverse employment actions.

37. Defendant failed to engage in the interactive process.

38. Defendant failed to provide a reasonable accommodation to Plaintiff. The failure caused significant pain and discomfort and made her job much more difficult.

39. Defendant treated other, similarly situated non-disabled employees differently than Plaintiff.

40. Defendant has violated both federal and state laws by retaliating against Plaintiff for requesting a reasonable accommodation for her disability.

### C. Engaging in Protected Activity under Title VII and the ADA

41. Plaintiff engaged in protected activity by reporting her age and disability discrimination to Defendant's Human Resources Department.

42. Defendant was aware that Plaintiff reported it to Defendant's Human Resources Department.

43. Plaintiff was subsequently subjected to adverse employment actions, such as harassment, receipt of poor performance reviews, discipline, and ultimately termination, which constitute adverse employment actions.

44. Plaintiff's supervisors began treating Plaintiff negatively and differently soon after she engaged in protected activity.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment be entered in her favor and against Defendant in an amount sufficient to adequately compensate her for her special and general damages together with punitive damages, statutory penalties, attorney's fees, legal interest thereon from date of judicial demand until paid, all costs of this suit, and for all other general and equitable relief deemed appropriate by this Court or allowable by law.

Dated: May 17th, 2019

Respectfully submitted:

**QUINN ALSTERBERG, LLC**

*/s/ Justin E. Alsterberg*
JULIE QUINN (#21923)
JUSTIN E. ALSTERBERG (#31015)
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 522-5607
Facsimile: (504) 302-9360
*Counsel for Bridget Lanegrasse*